OPINION
{¶ 1} This timely appeal matter comes for consideration on the record in the trial, the parties' briefs and their oral arguments before this Court. Appellant State of Ohio appeals the decision of the Columbiana Court of Common Pleas granting Appellee George Brown, Jr.'s motion to suppress evidence. The issue we must address is whether the police went outside the scope of the consent form signed by Brown when they seized two computers from his home. We conclude the police did in fact go outside the scope of Brown's consent since he protested before the police seized the computers, making it a warrantless search. Because the warrantless seizure did not fall into any of the permissible exceptions, the seizure was unreasonable and therefore violative of Brown'sFourth Amendment rights. Accordingly, the trial court properly granted Brown's motion to suppress.
 Facts and Standard of Review {¶ 2} Pursuant to the trial court's judgment entry granting Brown's motion to suppress, the following are the facts the court relied upon to make its decision.
 {¶ 3} "On November 12 the detective sergeant interviewed the defendant at the Chester, West Virginia police department. At the police department, the defendant gave the detective five pictures. The pictures were obviously printed on a computer printer and according to the detective depicted five young females that he believed to be juveniles in various straights of undress or nudity. The detective testified that before `we left there [the police department] we had made arrangements for me to meet Mr. Brown at the residence so that I could see where the sleeping arrangements were, and to look at the computers in the house.'
 {¶ 4} "`I asked him for consent to let me walk in the house and look around and perhaps look at the computers. He consented to that verbally at the police station. I met him there [at the residence] and before we — we, meaning myself and Detective Lieutenant Herbert, stepped inside the door, and I executed a document, a consent to search form.'
 {¶ 5} "The consent to search form was introduced and was signed by the defendant. That form indicates that the defendant `hereby grants my consent to Detective Sergeant Allan D. Young as a deputy sheriff of the Columbiana County Sheriff's office, to search the following * * * residence located at 6634 S.R.7 New Waterford, Ohio including all rooms and buildings * * *. Nothing in that search form suggested that any consent was given to seize any items from the residence. Prior to asking the defendant to execute the document Young `explained that I wanted to look around the house, and look at his computers, and if there were any — if there was any evidence there, uh, I would like to take it with me for analysis.' Because of the interview and the pictures Young wanted to make sure there was no evidence on the machines in the house.
 {¶ 6} "When Young entered the house he noticed a Compaq computer that was turned on. He did not search the computer. He was specifically looking for a Dell computer because of his interview with Brown. Brown at first denied that there was a Dell computer but later showed the computer to Young. It was in a back room of the house and was not turned on. Young, over protests from the defendant and his wife, took both computers. At no time did Young make any investigation of the computers themselves while on the premises.
 {¶ 7} "This case is a scope of consent to search case. Defendant does not deny, nor can he, that the(sic) voluntarily gave consent to enter his house. What he does contest is the scope of the search and seizure that ensued. Nothing in any of the evidence before this court indicates that the detectives informed the defendant that they intended to seize the computers. The scope of the consent essentially was to look around the house and look at the computers and look where the sleeping arrangements were. The detectives were going to seize any evidence and take it for analysis. However, Young himself wanted to make sure that there wasn't any evidence on the machines in the house. His intent in entering the house was to seize the machines or at least look at them. But there is no evidence he so informed the defendant. In his testimony he does not define what he meant by `look at them' but the Court assumes it meant more than just seeing where they were and what they looked like. It appears that his intention was to sit down at the computers and search the computers for pornography." (Judgment Entry dated August 27, 2003)
 {¶ 8} After hearing this evidence, the trial court concluded that since the computers were unlawfully seized, any evidence derived from their seizure should be suppressed.
 {¶ 9} In considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses.State v. Mills (1992), 62 Ohio St.3d 357, 366. "Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence." State v. Guysinger
(1993), 86 Ohio App.3d 592, 594. However, we must determine independently whether the trial court's conclusions of law, based on those findings of fact, are correct. State v. Klein (1991), 73 Ohio App.3d 486, 488.
 Scope of Consent Search {¶ 10} As it's sole assignment of error, the State argues:
 {¶ 11} "The trial court erred in granting the Defendant's motion to suppress and finding that the seizure of computers from the Defendant's home violated the Fourth Amendment of the United States Constitution and the Bill of Rights of the Ohio Constitution."
 {¶ 12} It is undisputed that Brown voluntarily signed a form which granted his consent to the police to search his home. What is contested, however, was whether or not Brown gave consent to the police to seize his computers.
 {¶ 13} "The scope of a consent search is limited by the bounds, and determined by the breadth, of the actual consent itself. The requirement of a warrant is waived only to the extent granted by the defendant in his consent. United States v. Dichiarinte (1971), 445 F.2d 126. A suspect may delimit as he chooses the scope of the search to which he consents.Florida v. Jimeno (1991), 500 U.S. 248, at 252, 111 S.Ct. 1801,114 L.Ed.2d 297." State v. Casey (May 26, 2000), 2d Dist. No. 99-CA-43 at 3. Significantly, the subject of a search may limit the scope of consent and may withdraw or limit the scope of consent after a search has begun.State v. Rojas (1993), 92 Ohio App.3d 336, 339; see also State v. Iacona
(Mar. 15, 2000), 9th Dist. No. CA 2891-M.
 {¶ 14} Here, it is clear from the record that the police were permitted to view the computers since Brown showed each of them to the police. Pursuant to the trial court's interpretation of the facts, however, Brown was never informed that the police intended to seize the computers. Therefore, he could not have granted consent for them to be seized. More importantly, the trial court found that the police, "over protests from the defendant and his wife, took both computers." It was at this point that Brown clearly defined the scope of his consent. Pursuant to the trial court's findings of fact, it is clear that Brown did not consent to the seizure of the computers. Accordingly, the seizure of the computers was made without consent and without a warrant.
 {¶ 15} It is well-settled "that warrantless searches are `per se' unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." State v.Kessler (1978), 53 Ohio St.2d 204, 207. In State v. Akron Airport PostNo. 8975 (1985), 19 Ohio St.3d 49, 51, the Ohio Supreme Court identified those exceptions: (1) search incident to arrest; (2) consent; (3) stop-and-frisk; (4) hot pursuit; (5) probable cause coupled with exigent circumstances; and, (6) plain view. To survive a motion to suppress, the state bears the burden of proving that one of these exceptions applies to evidence derived from a warrantless search or seizure. Id.; State v.Smith (1991), 73 Ohio App.3d 471. The two exceptions that apply in this case are plain view and exigent circumstances.
 Plain View {¶ 16} In certain circumstances, police may seize evidence found in plain view despite the failure to obtain a warrant for that seizure.Coolidge v. New Hampshire (1971), 403 U.S. 443, 465-466. For the seizure to be valid, however, the initial intrusion which permitted police to come into a position to view the object in question must be justified by a warrant or recognized exception. Horton v. California (1990),496 U.S. 128, 136. The court went on to state that there were two additional conditions that must also be satisfied to justify the warrantless seizure: (1) "not only must the item be in plain view, its incriminating character must also be `immediately apparent;'" and (2) "not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself." Horton at 136-137. Notably, the police officer need not know that the items in plain view are contraband or evidence of a crime. It is sufficient that probable cause exist to associate the property with criminal activity before evidence may be seized under the plain view doctrine. Arizona v. Hicks (1987),480 U.S. 321, 326.
 {¶ 17} The Ohio Supreme Court has similarly adopted the plain view doctrine as an exception to the warrant requirement stating, "Under [the plain view] doctrine, an officer may seize an item without a warrant if the initial intrusion leading to the item's discovery was lawful and it was `immediately apparent' that the item was incriminating." State v.Waddy (1992), 63 Ohio St.3d 424, 442; see also State v. Kinley (1995),72 Ohio St.3d 491.
 {¶ 18} Here, there is no question that the police were lawfully in Brown's home when they observed the two computers in "plain view." The question remains whether it was immediately apparent that the two computers were incriminating. Other courts have dealt with similar situations where it wasn't obvious that an item was evidence of a crime or could lead to evidence of a crime.
 {¶ 19} In State v. Mitchell (Nov. 9, 1988), 4th Dist. No. 1467, during the execution of a search warrant for "controlled substances and illegally possessed dangerous ordnances, and any other items criminally possessed," the police discovered unlabeled videotapes that they later inventoried and viewed. As a result, pandering charges were brought against the defendant. However, the defendant moved to suppress them because it was not immediately apparent that the unmarked videotapes were associated with criminal activity. The trial court granted the motion and the Fourth District upheld its decision noting that "[i]n order to determine the incriminating nature of those tapes, the officers had to seize and then view them." Id. at p. 2.
 {¶ 20} Likewise, in State v. Reeves (May 12, 2000), 6th Dist. Nos. WD-99-047, WD-99-048, the Sixth District upheld the exclusion of obscene videotapes since their criminal nature was not immediately apparent to the arresting officers. In Reeves, an officer overheard the defendants discussing the sale of videotapes "for an unusually low price" over a CB radio. After stopping the truck, one of the officers approached the passenger side and saw a videocassette in the cab with the title "Lethal Weapon 4" handwritten on an adhesive label. Notably, the officer did not observe any obscene videotapes with sexually explicit covers and titles until after the warrantless search was underway.
 {¶ 21} The Sixth District noted that while the police had reason to suspect initially that the defendants may have been involved in the sale of unlicensed videos, they did not possess sufficient information to lead a cautious person to conclude that a crime was being committed at that moment. The court explained that the officers would have been justified in approaching the defendants' truck once it was pulled over and questioning the occupants briefly. Accordingly, the court concluded that because the obscene nature of the videotapes in the defendants' truck were not immediately apparent to the arresting officers, the ensuing warrantless search and seizure did not fall under the plain view exception to the warrant requirement.
 {¶ 22} In the present case, although it could be argued that the officers could have reasonably suspected that the computers in Brown's home could have contained child pornography, there was not enough evidence to support a finding of probable cause. More specifically, the only evidence the police had that would lead them to believe those computers contained pornographic material was the fact that the pictures appeared to be printed with a computer printer. There was no evidence the pictures were printed off the two computers in Brown's home. Nor were any pornographic images seen on the screens during the search. The trial court was correct in its determination that no probable cause existed to seize the computers since the criminal nature of the computers and their contents was not immediately apparent to the officers. The plain view exception does not validate the instant warrantless seizure. The State's assignment of error is meritless on this basis.
 Exigent Circumstances {¶ 23} The second exception to the warrantless search exclusion rule that applies to the instant case is that the seizure was proper due to exigent circumstances. The United States Supreme Court has stated that the proper legal standard for determining whether there are exigent circumstances contemplates whether "there is hot pursuit of a fleeing felon, imminent destruction of evidence, Welsh v. Wisconsin (1984),466 U.S. 740, the need to prevent a suspect's escape or the risk of danger to the police or to other persons inside or outside the dwelling."Minnesota v. Olsen (1990), 495 U.S. 91, 100 (citations omitted). The only exigent circumstance that could possibly apply to this case is the imminent destruction of evidence.
 {¶ 24} When police officers seek to rely on the destruction of evidence exception in justifying a warrantless entry, they must show an objectively reasonable basis for concluding that the loss or destruction of evidence is imminent. State v. Baker and Bakey (Apr. 25, 1991), 8th Dist. App. Nos. 60352, 60353, citing United States v. Sangineto-Miranda
(6th Cir. 1988), 859 F.2d 1501, 1512. "The mere possibility or suspicion that a party is likely to dispose of evidence when faced with the execution of a search warrant is not sufficient to create an exigency. * * * Nor is the generalized and often recognized fear that destruction of evidence is an inherent possibility during the execution of a warrant adequate grounds to find exigent circumstances, * * *." State v. Russell
(June 30, 1998), 4th Dist. No. 97 CA 37 at 18 citing United States v.Bates (C.A. 6, 1996), 84 F.3d 790, 796.
 {¶ 25} Other districts have required that there be some factual basis established on the record that evidence would be destroyed in that particular case if the officer's entry or search was delayed. In other words, articulable facts must be introduced which prove that in the particular case there is a strong probability that evidence will be destroyed based upon factors uniquely present under those circumstances.State v. Dixon, 141 Ohio App.3d 654, 661, 2001-Ohio-2120.
 {¶ 26} In Segura v. U.S. (1984), 468 U.S. 796, the United States Supreme Court addressed whether the temporary securing of a dwelling to prevent removal or destruction of evidence violates the Fourth Amendment. The court noted that the securing of premises to preserve the status quo while a search warrant is being sought is not violative of theFourth Amendment when officers have probable cause to believe that evidence of criminal activity is present within the premises. Id. at 809-810. Accordingly, the Supreme Court suggested that, while entry into a dwelling on less than exigent circumstances and a concurrent search therein violates a Fourth Amendment right, the less intrusive nature of a seizure associated with securing the premises until a search warrant arrives is constitutionally permissible. Id.
 {¶ 27} In State v. Wangul (Feb. 14, 2002), 8th Dist. No. 79393, a neighbor called the police regarding the defendant's cultivation of marijuana plants in his backyard. That same neighbor allowed the police to use his backyard to observe the defendant watering the marijuana plants. After the defendant was observed briefly, an officer jumped the fence into the defendant's yard to further question him. He also asked the defendant to assist him in tearing out the marijuana plants while the other officers pulled their car around and entered the defendant's yard through the backyard gate.
 {¶ 28} In light of these facts, the Eighth District concluded there were no exigent circumstances. The court explained that there was no evidence presented that the officers were afraid the defendant was going to start destroying the marijuana plants. To the contrary, the court concluded that the evidence presented did show that there were enough officers present to secure the backyard until a search warrant could have been properly obtained, and the marijuana seized from the defendant's backyard should have been suppressed by the trial court.
 {¶ 29} In the present case, there was no testimony from the officers regarding any fear that evidence would be destroyed if they left to get a warrant to seize the computers. Second, there was no reason why the officers could not have secured the premises and obtained a search warrant to seize the computers. Finally, there was no probable cause to seize the computers under the plain view doctrine since their criminal nature was not immediately apparent. The exigent circumstances exception does not validate the instant warrantless search and seizure. The State's assignment of error is meritless on this basis as well.
 {¶ 30} In conclusion, the police entered Brown's home only with consent to search. The consent form did not permit the police to seize anything. Moreover, Brown verbally told the police not to take the computers. Thus, the police did not have consent to seize the computers. Because this warrantless seizure fell outside all of the other recognized exceptions, this search was violative of Brown's 4th Amendment rights and the trial court properly granted Brown's motion to suppress.
 {¶ 31} Accordingly, Appellant's sole assignment of error is meritless and the judgment of the trial court is affirmed.
Waite, P.J., concurs.
Donofrio, J., concurs.