[Cite as *State v. Jacko*, 2011-Ohio-6494.]

IN THE COURT OF APPEALS OF MONTGOMERY COUNTY, OHIO

STATE OF OHIO                          :

      Plaintiff-Appellee          :        C.A. CASE NO. 24371

vs.                                    :        T.C. CASE NO. 10CR833

ALVIN L. JACKO                         :        (Criminal Appeal from
                                           Common Pleas Court)

      Defendant-Appellant         :

. . . . . . . . .

**O P I N I O N**

Rendered on the 16th day of December, 2011.

. . . . . . . . .

Mathias H. Heck, Jr., Pros. Attorney; Andrew T. French, Asst. Pros. Attorney, Atty. Reg. No. 0069384, P.O. Box 972, Dayton, OH 45422
      Attorneys for Plaintiff-Appellee

A. Mark Segreti, Jr., Atty. Reg. No. 0009106, 1405 Streamside Drive, Dayton, OH 45459
      Attorney for Defendant-Appellant

. . . . . . . . .

GRADY, P.J.:

{¶ 1} Defendant, Alvin Jacko, appeals from his conviction and sentence for possession of crack cocaine, which was entered on his plea of no contest after the trial court overruled Defendant's motion to suppress evidence.

{¶ 2} On January 3, 2010, Trotwood Police Sergeant Joseph McCrary was

dispatched to a gas station on Salem Avenue on a report that a customer had attempted to pass a counterfeit twenty dollar bill. The dispatch included a description of the suspect and his vehicle. Upon arriving, Sergeant McCrary observed a man and a vehicle matching the description at one of the gas pumps. The man was Defendant, Alvin Jacko.

{¶ 3} Sergeant McCrary approached Defendant and explained why he was there. Defendant said he knew police had been called. Sergeant McCrary asked Defendant to go inside the station with him to talk to the station's clerk. Once inside, the clerk explained that Defendant had attempted to pay for his gas with a twenty dollar bill that the clerk, upon inspection, determined was counterfeit. When the clerk told Defendant that the bill was fake, Defendant said he had gotten it at a bank, and he asked the clerk to return the counterfeit bill so he could take it back to the bank. The clerk refused and called police. Defendant then paid the clerk with a real twenty dollar bill and began pumping his gas.

{¶ 4} Sergeant McCrary asked Defendant where he had obtained the counterfeit bill. Defendant said he got it at a store. McCrary then asked Defendant if he had any more counterfeit bills. Defendant said he did not. Sergeant McCrary then asked Defendant, "Do you mind if I check?" Defendant said, "No, go right ahead," and then pulled out his wallet and showed McCrary the bills in his wallet. After examining the money in Defendant's wallet, Sergeant McCrary then asked if he could pat defendant down in order to make sure he didn't have any more counterfeit money hidden on his person. Defendant said, "That's fine," and raised his arms for the patdown.

{¶ 5} As Sergeant McCrary began the pat down he felt and heard crumpling paper in Defendant's jacket pocket, which he suspected was more counterfeit money. When Sergeant

McCrary asked Defendant what was in his jacket pocket, Defendant became agitated. He brought his arms down and began to reach toward that jacket pocket, as though he didn't want McCrary to check that pocket. Defendant asked Sergeant McCrary "Do we really have to do this?" Sergeant McCrary explained that it was necessary.

{¶ 6} When a back-up officer entered the gas station, Defendant put his arms back up in the air and Sergeant McCrary resumed patting down Defendant's jacket pocket. Sergeant McCrary reached in and removed three one dollar bills from that jacket pocket. The bills were real. When Sergeant McCrary then felt that jacket pocket again, he still heard the same "crumpling" sound. As Sergeant McCrary began to once again reach inside that jacket pocket, Defendant became more agitated, turned away from McCrary, and began yelling. At that point, Sergeant McCrary handcuffed Defendant for safety reasons. McCrary then reached inside Defendant's jacket pocket and removed a plastic baggie containing crack cocaine. Defendant was arrested for possession of cocaine.

{¶ 7} Defendant was indicted on one count of possession of crack cocaine, less than one gram, in violation of R.C. 2925.11(A). Defendant filed a motion to suppress evidence. Following a hearing, the trial court overruled Defendant's motion. The court held that Sergeant McCrary had reasonable suspicion of criminal activity to justify the investigatory stop and detention of Defendant under *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Additionally, the court held that while Defendant initially voluntarily consented to the patdown of his person by Sergeant McCrary, Defendant had revoked his consent for the patdown by the time Sergeant McCrary had to handcuff an agitated Defendant in order to continue the patdown of his jacket pocket. However, by that time, Sergeant

McCrary had probable cause to believe that contraband, counterfeit money, was concealed on Defendant's person based upon "plain feel" and hearing a "crinkling" sound when patting down Defendant's jacket pocket. That permitted Sergeant McCrary to reach inside that pocket and remove the item inside.

{¶ 8} Defendant subsequently entered a plea of no contest to the cocaine possession charge and was found guilty. The trial court sentenced Defendant to five years of community control sanctions.

{¶ 9} Defendant appeals.

FIRST ASSIGNMENT OF ERROR

{¶ 10} "THE TRIAL COURT ERRED IN FAILING TO GRANT THE MOTION TO SUPPRESS."

{¶ 11} In arguing that the trial court erred when it overruled his motion to suppress evidence, Defendant raises multiple claims regarding why the stop, detention, and search of his jacket pocket that produced crack cocaine violated his Fourth Amendment rights. We shall address those in order.

{¶ 12} When considering a motion to suppress, the trial court assumes the role of the trier of facts and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id*. Accepting those facts as true, the appellate court must then independently determine, without deference to the trial court's conclusion, whether those facts satisfy the applicable legal standard. *Id*.

Initial Stop/Detention

**{¶ 13}** In *State v. Cosby*, 177 Ohio App.3d 670, 2008-Ohio-3862 at ¶16-18, this court observed:

**{¶ 14}** "Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject to only a few well-recognized exceptions. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. One of those exceptions is the rule regarding investigative stops, announced in *Terry,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, which provides that a police officer may stop an individual to investigate unusual behavior, even absent a prior judicial warrant or probable cause to arrest, where the officer has a reasonable, articulable suspicion that specific criminal activity may be afoot.

**{¶ 15}** "An officer's inchoate hunch or suspicion will not justify an investigatory stop. Rather, justification for a particular seizure must be based upon specific and articulable facts that, taken together with the rational inferences from those facts, reasonably warrant that intrusion. The facts must be judged against an objective standard: whether the facts available to the officer at the moment of seizure or search would warrant a person of reasonable caution in the belief that the action taken was appropriate. Id. See also *State v. Grayson* (1991), 72 Ohio App.3d 283, 594 N.E.2d 651.

**{¶ 16}** "Whether an investigative stop is reasonable must be determined from the totality of the circumstances that surround it. *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044. The totality of the circumstances are 'to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' *State v. Andrews* (1991), 57 Ohio St.3d 86, 87–88, 565 N.E.2d 1271, citing *United*

*States v. Hall* (C.A.D.C.1976), 525 F.2d 857, 859; *Freeman,* supra, at 295, 18 O.O.3d 472, 414 N.E.2d 1044."

{¶ 17} Sergeant McCrary was dispatched to the gas station on a report that a customer had tried to pass a counterfeit twenty dollar bill. The dispatch included a description of the suspect and his vehicle. Upon arriving at the scene, Sergeant McCrary observed Defendant, who matched the suspect's description, pumping gas into a vehicle that matched the suspect vehicle description. When Sergeant McCrary approached Defendant and explained that he was there to investigate the passing of counterfeit money, Defendant said he knew police had been called. Defendant concedes in his appellate brief that Sergeant McCrary had sufficient reasonable, articulable suspicion of criminal activity to justify an investigatory stop and detention of Defendant under *Terry v. Ohio, supra*. We agree.

<u>Consent to Search</u>

{¶ 18} Defendant went inside the gas station with Sergeant McCrary, who spoke to the station clerk in Defendant's presence. The clerk related what had happened. McCrary then asked Defendant if he had any more counterfeit money on his person. Defendant said he did not. Sergeant McCrary asked Defendant, "Do you mind if I check?" Defendant said, "No, go right ahead." Defendant then handed McCrary his wallet and McCrary examined the money in Defendant's wallet and determined that it was not counterfeit. Knowing from his experience as a police officer that counterfeit money is typically not kept or carried in a wallet, but on the subject's person, Sergeant McCrary asked Defendant if he could pat him down in order to make sure that he didn't have any counterfeit money anywhere on his person. Defendant said, "That's fine," and raised his arms up for the patdown. Sergeant McCrary

then began the patdown.

**{¶ 19}** Defendant argues that he did not consent to the patdown procedure but rather merely acquiesced and submitted when Sergeant McCrary told him the patdown was normal procedure. The trial court, however, concluded that McCrary's testimony on the consent issue is more credible than Defendant's, and that the totality of the evidence demonstrates that Defendant initially freely and voluntarily consented to the patdown procedure. We agree.

**{¶ 20}** Defendant also claims that the patdown procedure violated his Fourth Amendment rights because a patdown or frisk is permissible only when the officer reasonably believes that the suspect may be armed and dangerous, and the limited, protective search is performed solely for the purpose of discovering concealed weapons. *Terry; State v. Evans* (1993), 67 Ohio St.3d 405. That argument is unavailing in this case, however, given that Defendant was told that the purpose of the pat-down was not to locate a weapon but to find any counterfeit money hidden on his person, and Defendant gave his voluntary consent for that patdown procedure.

**{¶ 21}** In *State v. Arnold*, Montgomery App. No. 24195, 2011-Ohio-238, at ¶20-22, we stated:

**{¶ 22}** "Under applicable legal standards, the State has the burden of showing the validity of a warrantless search, because warrantless searches are 'per se unreasonable under the Fourth Amendment-subject only to a few specifically established and well delineated exceptions.' *State v. Hilton,* Champaign App. No. 08-CA-18, 2009-Ohio-5744, ¶ 21-22, citing *City of Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 218, 524 N.E.2d 889.

**{¶ 23}** "Consent is one exception to the warrant requirement, and requires the State to

show by '"clear and positive" evidence that the consent was "freely and voluntarily" given.' *State v. Posey* (1988), 40 Ohio St.3d 420, 427, 534 N.E.2d 61 (citations omitted). 'A "clear and positive" standard is not significantly different from the "clear and convincing" standard of evidence, which is the amount of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations to be proved. It is an intermediate standard of proof, being more than a preponderance of the evidence and less than evidence beyond a reasonable doubt.' *State v. Ingram* (1992), 82 Ohio App.3d 341, 346, 612 N.E.2d 454 (citations omitted).

{¶ 24} "In order to be valid, consent cannot be the product of coercion. '"Consent" that is the product of official intimidation or harassment is not consent at all. Citizens do not forfeit their constitutional rights when they are coerced to comply with a request that they would prefer to refuse.' *Florida v. Bostick* (1991), 501 U.S. 429, 438, 111 S.Ct. 2382, 115 L.Ed.2d 389. Furthermore, 'the question whether a consent to a search was in fact "voluntary" or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.' *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854."

{¶ 25} The totality of the facts and circumstances in this case support the trial court's finding that Defendant initially freely and voluntarily consented to the patdown search for counterfeit money. There is no evidence of duress or coercion by Sergeant McCrary who simply asked Defendant for permission to pat him down for counterfeit currency. Defendant was fully cooperative and said, "that's fine," and then raised his arms up to facilitate the patdown. These facts and circumstances demonstrate that Defendant freely and voluntarily

consented to the patdown search for counterfeit money, at least initially.

Revocation of Consent

{¶ 26} A suspect may revoke his consent to a search or limit the scope of the search to which he consents. *State v. Rojas* (1993), 92 Ohio App.3d 336; *State v. Brown*, 158 Ohio App.3d 21, 2004-Ohio-3364; *State v. Jordan* (Mar. 31, 1995), Clark App. No. 94CA55; *State v. Casey* (May 26, 2000), Miami App. No. 99CA43.

{¶ 27} When Sergeant McCrary began his patdown of Defendant, he felt and heard crumpling paper in Defendant's jacket pocket, which he suspected was more counterfeit money. When McCrary asked Defendant what was in his jacket pocket, Defendant became agitated, lowered his arms, and began to reach for that pocket, indicating that he did not want McCrary to search that jacket pocket. Defendant asked Sergeant McCrary, "Do we really have to do this?" Sergeant McCrary explained that it was necessary. When a back-up officer entered the gas station, Defendant put his arms back up in the air and Sergeant McCrary resumed patting Defendant's jacket pocket, and reached into that jacket pocket and removed three one dollar bills that were not counterfeit. Sergeant McCrary then patted that pocket again, whereupon he again heard the same "crumpling" sound. Believing there still might be more counterfeit money in that pocket, Sergeant McCrary started to reach inside that jacket pocket a second time when an increasingly more agitated Defendant turned away and began yelling. At that point, Sergeant McCrary handcuffed Defendant for safety reasons, and then reached inside Defendant's jacket pocket and removed the plastic baggie containing crack cocaine which led to Defendant's arrest.

{¶ 28} The trial court concluded that when Defendant became increasingly more

agitated during the patdown, it appeared to Sergeant McCrary that Defendant did not want the patdown to extend to his jacket pocket. However, he did not revoke his consent for the patdown at that point in time. Later, when Defendant had to be handcuffed to continue the patdown, Defendant effectively revoked his consent.

{¶ 29} The State concedes in its appellate brief that Defendant effectively revoked his consent for the patdown search of his jacket pocket well before Sergeant McCrary handcuffed him. The State admits that Defendant's consent was likely revoked once he lowered his arms and protested whether "we really have to do this," demonstrating by his conduct that he did not consent to the patdown search extending to his jacket pocket. We agree. See e.g. *United States v. Sanders* (8th Circuit, 2005), 424 F.3d 768. After that, in order to search Defendant's pocket for contraband, which was his purpose, Sergeant McCrary had to have probable cause to believe that the pocket contained more counterfeit bills.

Plain Feel

{¶ 30} The trial court concluded that when Sergeant McCrary first patted Defendant's jacket pocket and heard a crinkling noise and felt paper, that gave rise under the "plain feel" doctrine for probable cause to believe that Defendant had contraband, counterfeit currency, concealed on his person, which permitted Sergeant McCrary to reach inside that jacket pocket and remove the item.

{¶ 31} In *State v. Victoria*, Clark App. No. 2009CA95, 2010-Ohio-4536 at ¶35, we stated:

{¶ 32} "Under the plain feel doctrine, an officer conducting a patdown for weapons may lawfully seize an object if he has probable cause to believe that the item is contraband.

*Minnesota v. Dickerson* (1993), 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334; *State v. Phillips,* 155 Ohio App.3d 149, 799 N.E.2d 653, 2003–Ohio–5742, ¶ 41–42. The 'incriminating character' of the object must be 'immediately apparent,' meaning that the police have probable cause to associate an object with criminal activity. *Dickerson,* 508 U.S. at 375; *State v. Buckner,* Montgomery App. No. 21892, 2007–Ohio–43392. The officer may not manipulate the object to identify the object or to determine its incriminating nature. *Dickerson,* supra; *State v. Lawson,* 180 Ohio App.3d 516, 906 N.E.2d 443, 2009–Ohio–62, ¶ 25."

{¶ 33} Sergeant McCrary testified that when he first felt the area outside Defendant's pocket he felt "paper in [the] pocket . . . it made a crumbling noise, like either loose paper or money . . . if you squeezed the pocket." (Tr. 11). When asked whether it was "[f]air to say you were moving the object that was in his pocket . . . kind of crumpling it, moving it?", Sergeant McCrary replied "yes." (Tr. 28). Sergeant McCrary further testified: "Once I hear the crumbling, then I want to see if there's any counterfeit money inside." (Tr. 23).

{¶ 34} When Sergeant McCrary was asked whether "[a]t that point it's not readily apparent as to what that crumbling is. You have your suspicions, it's not readily apparent," the officer replied, "Right." (Tr. 28). Sergeant McCrary explained that, after removing the three one dollar bills, "[t]here's something else inside that pocket that he didn't want me to get to. So I reached inside and grabbed – and pulled out the plastic bag." (Tr. 34). Sergeant McCrary confirmed that he was "looking for counterfeit money" when he again reached inside Defendant's pocket, (Tr. 34), and that he reached inside and pulled the

{¶ 35} object out "prior to knowing what it was." (Tr. 31).

{¶ 36} Taken as a whole, Sergeant McCrary's testimony was that he heard what he described as a "crumbling sound," similar to the sound of paper money that's moved, when he first patted down the area outside Defendant's pocket, "if you squeezed the pocket." Squeezing the pocket in that way is the kind of manipulation to determine the identity of what was in the pocket that *Dickerson* prohibits. Sergeant McCrary conceded that it was not then readily apparent to him what the object was, and because Defendant didn't want him to know what was in the pocket, Sergeant McCrary reached inside and pulled the object out, for the purpose of seizing any counterfeit money that was inside. That seizure was not one which was reasonable under the "plain feel" doctrine of *Dickerson*, because the criminal character of what the officer felt was not readily apparent to him when he performed the search of Defendant's pocket that resulted in the seizure. The trial court erred when it denied Defendant's motion to suppress.

{¶ 37} Defendant's first assignment of error is sustained.

## SECOND ASSIGNMENT OF ERROR

{¶ 38} "THE JUDGMENT ENTRY IS UNLAWFUL IN ERRONEOUSLY INDICATING HOW THE COURT FOUND DEFENDANT GUILTY."

{¶ 39} Defendant argues that the judgment of conviction is invalid because the judgment entry erroneously indicates that Defendant pled guilty when, in fact, he pled no contest and was found guilty by the court.

{¶ 40} We previously recognized this error in the record of the trial court's proceedings and remanded this case back to the trial court to correct that error. See: Decision and Entry filed March 22, 2011. Pursuant to our remand, on May 26, 2011, the trial court

filed an Amended Termination Entry that correctly reflects that Defendant pled no contest and was found guilty by the trial court. This assignment of error has become moot.

{¶ 41} Defendant's second assignment of error is overruled.

{¶ 42} Having sustained Defendant's first assignment of error, the judgment of the trial court will be reversed and the matter remanded for further proceedings.

FAIN, J., And DONOVAN, J., concur.

Copies mailed to:

Andrew T. French, Esq.
A. Mark Segreti, Esq.
Hon. Barbara P. Gorman