[Cite as *State v. Lagese*, 2013-Ohio-5773.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 11 MA 198 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| ANTHONY LAGESE | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from the Court of Common Pleas of Mahoning County, Ohio
Case No. 10 CR 1274A

JUDGMENT: Affirmed.

APPEARANCES:

For Plaintiff-Appellee: Atty. Paul J. Gains
Mahoning County Prosecutor
Atty. Ralph M. Rivera
Assistant Prosecuting Attorney
21 West Boardman Street, 6th Floor
Youngstown, Ohio 44503

For Defendant-Appellant: Atty. Andrew R. Zellers
Richard G. Zellers & Associates, Inc.
3810 Starrs Centre Dr.
Canfield, Ohio 44406

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: December 19, 2013

WAITE, J.

{¶1}  Appellant Anthony Lagese appeals a decision of the Mahoning County Common Pleas Court not to suppress testimony given by the two officers who arrested him for possession of crack cocaine following a traffic stop made in Youngstown, in November 2010.  On appeal, Appellant, who pleaded no contest after his motion to suppress failed, contends that the officers were incompetent to testify concerning the stop because it was made using an unmarked car.  Appellant also contends that the crack cocaine found in plain view during the traffic stop should be suppressed because it was identified only as the result of an unreasonable traffic stop.  Appellant's arguments are without merit.  The judgment of the trial court is affirmed.

Factual and Procedural History

{¶2}  Both Appellant and the state agree as to the facts of the occurrence on the evening of November 5, 2010.  Two police officers, Josh M. Kelly and Patrick Mulligan, were patrolling the south side of Youngstown as part of a street crimes unit.  Their responsibilities include "anything from tall grass to drug complaints to loitering in certain areas.  Basically our main goal is to get drugs and guns off the street." (Suppression Hrg. Tr., pp. 27-28.)  On the evening of November 5, 2010, around 7:00 p.m., the two officers were on patrol in a "white Crown Vic, basically a police car without markings.  It is the same unit we drive with the actual overhead-lights and police on the side.  It hasn't been detailed." (Suppression Hrg. Tr., p. 11.)  Officer Kelly, who ordinarily patrols in a K-9 unit, was with Officer Mulligan that night without his dog, but wearing his K-9 patrol uniform.  Officer Mulligan was wearing a standard

task force uniform, which differs from the standard patrol uniform. The unmarked car the two were using did not have a cage separating the front and back seats. The car does not have lights mounted on the roof, but instead has both blue and red lights mounted inside the grill and colored dashboard lights.

{¶3} The two officers were traveling west on Ravenwood when they noticed a gold-colored 1994 Buick turn into the driveway of 270 East Ravenwood without using a turn signal. The officers then activated the various lights in the unmarked car, pulled into the driveway behind the vehicle, and initiated a traffic stop. The officers could see that the Buick had two occupants. The officers exited their cruiser. Officer Mulligan approached the vehicle on the driver's side, and Officer Kelly approached on the passenger side. As he approached the car, Officer Kelly observed the driver move his hand down to his waist, pull an object away from his body, and appear to place it on the floor of the car. The officer later testified that he was initially concerned that the object might be a weapon, but continued to approach when the driver appeared to place it on the floor. (Suppression Hrg. Tr., pp. 19-20.) At this point, the passenger abruptly opened the door, nearly hitting Officer Kelly (who believed she did not see him) and threw her purse out of the car into the yard or bushes next to the driveway, before exiting the car. The woman, later identified as Debra Silvers, was then instructed by the officers to sit on the ground. (Suppression Hrg. Tr., p. 21.)

{¶4} Officer Kelly, standing outside the car's open passenger door, shone his light into the vehicle and observed on the hump between the driver and

passenger seats a plastic bag containing what he believed, due to his experience as a drug enforcement officer and through K-9 training, to be crack cocaine. (Suppression Hrg. Tr., pp. 7-8.) Appellant was then instructed to exit the vehicle and placed under arrest for possession of crack cocaine. Appellant was also issued a traffic citation for failure to use his turn signal. Silvers, who was sitting on the ground during Appellant's arrest, stated to the officers that she also had crack cocaine in her handbag. She was then arrested for possession.

{¶5} Both parties were arraigned in Mahoning County Common Pleas Court, and Appellant's counsel filed a motion to suppress the crack cocaine found during the traffic stop. A hearing was held on Appellant's motion and the trial court denied his motion to suppress. Appellant pleaded no contest and was found guilty. Appellant filed a timely appeal of his conviction.

<u>Argument and Law</u>

<u>Assignment of Error No. 1</u>

The police cruiser that stopped the Defendant-Appellant's automobile for a minor traffic violation was not properly marked under Ohio Revised Code §4549.13 as required for a police cruiser that patrols for and enforces Ohio Traffic Code, therefore rendering the seizure unlawful.

{¶6} A trial court's decision on a motion to suppress presents a mixed question of fact and law. *State v. Burnside*, 100 Ohio St. 152, 2003-Ohio-5372, ¶8. During a suppression hearing the trial court is itself the trier of fact, and "is therefore in the best position to resolve factual questions and evaluate the credibility of

witnesses" *Id., citing State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside, supra,* ¶8. Accepting those facts as true, the appellate court conducts a *de novo* review of whether the facts satisfy the applicable legal standards at issue in the appeal. *State v. Williams*, 86 Ohio App.3d 37, 41, 619 N.E.2d 1141 (1993). R.C. 4549.13 provides in part:

> Any motor vehicle used by * * * any * * * [police] officer, while said officer is on duty for the exclusive or main purpose of enforcing the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, shall be marked in some distinctive manner or color.

**{¶7}** R.C. 4549.14 provides:

> Any officer arresting, or participating or assisting in the arrest of, a person charged with violating the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, such officer being on duty exclusively or for the main purpose of enforcing such laws, is incompetent to testify as a witness in any prosecution against such arrested person if such officer at the time of the arrest was using a motor vehicle not marked in accordance with section 4549.13 of the Revised Code.

**{¶8}** Evid.R. 601(C) restates the provisions of R.C. 4549.14. To be found competent to testify about a traffic stop, the officer concerned must have been using

a "properly marked motor vehicle" and "wearing a legally distinctive uniform," if, at the time of the stop, the officer was "on duty for the exclusive or main purpose of enforcing traffic laws." Evid.R. 601(C).

{¶9} It is undisputed that Officers Mulligan and Kelly were not using a marked police cruiser, and, although both were in uniform, neither was wearing the regular patrol uniform used by officers solely engaged in traffic enforcement. Therefore, the question becomes whether the officers were on duty exclusively or for the main purpose of enforcing traffic laws. *State v. King*, 7th Dist. No. 05-CO-14, 2006-Ohio-894.

{¶10} In *King*, we upheld a trial court's decision finding a traffic stop proper and the officer qualified to testify. The officer in *King* observed a driver's erratic behavior and excessive speed and conducted a traffic stop, despite the fact that the officer was driving an unmarked vehicle and out of uniform at the time. The stop and subsequent testimony were both permitted because the officer was part of a task force and not engaged solely in traffic enforcement. Our decision in *King* directly supports R.C. 4549.14, and our reasoning in that instance is applicable in this case. At the hearing on Appellant's motion to suppress/dismiss, both officers testified that they were patrolling as part of a crime unit, and that traffic enforcement was not their sole or exclusive purpose. Under these circumstances, the trial court did not err in finding both officers competent to testify. Appellant's belief that all traffic stops must be conducted only by officers driving marked cars is mistaken. The marked car and uniform requirement applies only to those engaged exclusively in traffic enforcement.

R.C. 4945.13; Evid.R. 601. Appellant's first assignment of error is without merit and is overruled.

<u>Assignment of Error No. 2</u>

The Trial Court erred when it failed to suppress the evidence that was the result of an unlawful search and seizure under the Fourth Amendment to the United States Constitution, because the police officers did not have a warrant or the requisite probable cause for an exception to the warrant requirement to apply.

**{¶11}** The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 14 of the Ohio Constitution provides Ohioans with the same guarantee. The two, taken together, "require government officials to procure a warrant based on probable cause prior to conducting searches and seizures." *State v. Schwab*, 7th Dist. No. 08 MA 78, 2009-Ohio-1312, ¶11. "The ultimate standard set forth in the Fourth Amendment is reasonableness." *Cady v. Dombrowski*, 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). Thus, the Fourth Amendment protects citizens from unreasonable government searches and seizures but not those that are "reasonable." *United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568,

84 L.Ed.2d 605 (1985). "For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant." *State v. Moore*, 90 Ohio St.3d 47, 49 (2000). The probable cause and warrant requirements both apply to automobile stops, however, "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 61, 2006-Ohio-3563, ¶11; *Dayton v. Erickson*, 76 Ohio St.3d 3 (1996), syllabus.

{¶12} Appellant does not dispute the fact that he engaged in a turn without giving the appropriate signal, a violation of R.C. 4511.39(A), which provides:

No person shall turn a vehicle or trackless trolley or move right or left upon a highway unless and until such person has exercised due care to ascertain that the movement can be made with reasonable safety nor without giving an appropriate signal in the manner hereinafter provided.

The undisputed testimony of Officers Kelly and Mulligan also reflects that they had probable cause to effectuate a traffic stop.

{¶13} Once we have determined that the stop itself was reasonable, the record reflects that the officers satisfied the threshold requirement for the plain view exception to the warrant requirement: "the initial intrusion which permitted police to come into a position to view the object in question must be justified by a warrant or recognized exception." *State v. Brown*, 158 Ohio App.3d 21, 27-28, 2004-Ohio-3364, ¶16. "Under the [plain-view] doctrine, an officer may seize an item without a warrant

if the initial intrusion leading to the item's discovery was lawful and it was 'immediately apparent' that the item was incriminating." *Id.* at ¶17, quoting *State v. Waddy*, 63 Ohio St.3d 424, 442 (1992).

{¶14} In this instance, the officers did not need to undertake a search because the item was in plain view, and, according to Officer Kelly, its incriminating nature was readily apparent. However, even if the officer does not know that the item in plain view is actually contraband or evidence of a crime, it may be "sufficient that probable cause exists to associate the property with criminal activity before evidence may be seized under the plain-view doctrine." *Brown, supra*, at ¶16, citing *Arizona v. Hicks*, 480 U.S. 321, 326 (1987). In this instance, the lawful traffic stop, Appellant's movements, the placement of the object in plain view in the vehicle, the passenger's reaction to the stop, and the officer's own experience and knowledge established the necessary elements to justify the warrantless seizure of contraband in plain view.

{¶15} In his reply brief, Appellant argues for the first time that exigent circumstances are necessary for the warrantless search or "seizure of an automobile from the driveway of a private residence." *State v. Roaden*, 98 Ohio App.3d 500, 504, 648 N.E.2d 916 (1994). Appellant's failure to raise this issue in the trial court precludes him from raising it for the first time on appeal. *State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277, syllabus. Moreover, as we have previously noted, a reply brief is not an opportunity to raise new assignments of error or arguments, "it is merely an opportunity to reply to the appellee's brief." *Julian v. Creekside Health Ctr.*, 7th Dist. No. 03 MA 21, 2004-Ohio-3197, ¶81; App.R. 16(C).

**{¶16}** However, because an issue that would otherwise be precluded by waiver may nevertheless be brought to our attention as plain error, we note that Appellant's tardy argument misrepresents the caselaw and principles governing exigent circumstances. *Roaden*, *supra*, is wholly factually distinct, and addresses an improper pretextual trespass on to private property in the absence of a moving violation. *Roaden*, and the cases on which it relies, addressed the unjustified search and seizure of unattended vehicles parked on the private property of the owner. *Roaden* is not relevant to and does not raise any new or additional conditions placed on the conduct of a traffic stop due to a moving violation. Appellant mistakenly cites *State v. Johnson*, 187 Ohio App.3d 322, 2010-Ohio-1790, which discusses the gravity of the underlying offense in the context of the exigent circumstance exception to a home search, but not with regard to the search of an automobile. Automobiles, unlike homes, are almost always subject to an exception to the warrant requirement due to the exigency created by the "ready mobility" of the vehicle in combination with "the pervasive regulation of vehicles capable of traveling on the public highways." *California v. Carney*, 471 U.S. 386, 391-392, 105 S.Ct. 2066 (May 13, 1985). Regardless, no "exigent circumstances" are required to seize items of contraband in plain view. Because Appellant's exigent circumstances argument was not raised in the trial court or appropriately briefed on appeal, and because it does not identify an error at all, and certainly not a plain error, it must fail. Appellant's second assignment of error is without merit and is overruled.

Conclusion

{¶17} Officers Kelly and Mulligan were competent to testify concerning Appellant's failure to use his turn signal and the discovery of contraband resulting from the lawful traffic stop. The officers satisfied the requirements to make a warrantless seizure of contraband in plain view after the traffic stop. Appellant's two assignments of error are without merit and are overruled. The judgment of the trial court is affirmed.

Vukovich, J., concurs.

DeGenaro, P.J., concurs.