[Cite as *State v. Schneller*, 2013-Ohio-2976.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | Case No. 2013CA00004 |
| ANDREW A. SCHNELLER | |
| Defendant-Appellee | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Alliance Municipal Court,
Case No. 2012TRC03098


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     July 8, 2013


APPEARANCES:


For Plaintiff-Appellee                   For Defendant-Appellant


SHAWN O. ROBERTSON             WILLIAM F. MORRIS
Alex J. Robertson & Associates       Alliance City Prosecutor
2210 South Union Avenue           470 East Market Street
Alliance, Ohio 44601                 Alliance, Ohio 44601

*Hoffman, J.*

{¶1}  Plaintiff-appellant the state of Ohio appeals the December 26, 2012 Judgment Entry entered by the Alliance Municipal Court granting Defendant-appellee Andrew A. Schneller's motion to suppress.

STATEMENT OF THE FACTS AND CASE

{¶2}  On September 9, 2012, Captain James Hilles of the Alliance Police Department parked his police cruiser on the grass approximately 5-10 feet off of the north side of 23rd Street in the City of Alliance, facing eastbound.  The police cruiser was entirely off of the street, with the engine running.  The lights were not illuminated, and the car was completely "blacked out."  The word "POLICE" was indicated horizontally in 3 inch silver block letters over 30 inches long across the front quarter panels of the cruiser.

{¶3}  Captain Hilles testified he was parked on 23rd Street in the grass, facing eastbound, and the traffic was travelling westbound.  He explained he angled his video camera to capture the traffic, as he was positioned behind a tree, off to the north side of the road.  He was not on the berm of the road.  He admitted to being positioned "right next to [Appellant's] lane of travel" for approximately five feet of the roadway.  Tr. at 21-22.

{¶4}  Captain Hilles observed Appellee exit the rear parking lot of Chives Bar, and drive his motor vehicle westbound on 23rd Street, passing Captain Hilles location.  As Appellee approached Captain Hilles location, his vehicle was driven completely on the left side of the road.  At one point, the driver's side tires travelled completely off the

opposite side of the paved roadway. Appellee continued to drive on the left side of the roadway for approximately 200 feet.

{¶5} Captain Hilles described 23rd Street as an unmarked, asphalt roadway, wide enough for two cars to travel. He further testified there were no other vehicles on the roadway when Appellee traveled left of center.

{¶6} Captain Hilles turned his vehicle around, caught up with Appellee and ran the vehicle registration in LEADS. Appellee immediately turned into a private driveway. Captain Hilles initiated a traffic stop with his lights activated.

{¶7} Appellee was arrested and subsequently charged with operating a motor vehicle under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a), and driving on the wrong side of the roadway, in violation of Alliance Codified Ordinance §331.01(a).

{¶8} On November 9, 2012, Appellee filed a motion to dismiss/suppress arguing there was no lawful cause to stop and/or probable cause to arrest. The trial court conducted a hearing on the motion on November 30, 2012. Appellee filed an amended motion to dismiss/suppress on December 6, 2012, arguing the police cruiser was not marked and equipped with lights in conformity with the provisions of R.C. 4549.13. The trial court conducted a hearing on the amended motion on December 21, 2012.

{¶9} Via Judgment Entry of December 26, 2012, the trial court sustained the motion to suppress finding no reasonable suspicion to stop, and the arresting officer was incompetent to testify as his police cruiser was not marked and equipped with lights

as required by the provisions of R.C. 4549.13, based upon the authority of R.C. 4549.13 and Evidence Rule 601(C).

{¶10} Appellant the state of Ohio now appeals, assigning as error:

{¶11} "I. THE TRIAL COURT ERRED IN SUPRESSING [SIC] THE EVIDENCE IN THIS MATTER AND FINDING THAT THE OPERATION OF DEFENDANT-APPELLEE'S VEHICLE LEFT OF CENTER FOR APPROXIMATELY 200 FEET DURING WHICH TIME THE DRIVER'S SIDE TIRES LEFT THE PAVED PORTION OF THE ROADWAY ARE NOT SPECIFIC AND ARTICULABLE FACTS WHICH WOULD GIVE RISE TO A REASONABLE SUSPICION THAT THE DEFENANT-APPELLEE [SIC] MAY BE INVOLVED IN CRIMINAL ACTIVITY.

{¶12} "II. THE TRIAL COURT ERRER [SIC] IN SUPRESSING [SIC] THE EVIDENCE IN THIS MATTER AND FINDING THE ARRESTING OFFICER'S MOTOR VEHICLE WAS NOT MARKED IN SOME DISTINCTIVE MANNER OR COLOR AND EQUIPPED WITH AT LEAST ONE FLASHING, OSCILLATING, OR ROTATING COLORED LIGHT MOUNTED ON THE OUTSIDE ON TOP OF THE VEHICLE IN CONFORMITY WITH §4549.13, O.R.C., AND FINDING THE ARRESTING OFFICER INCOMPETENT TO TESTIFY AS A WITNESS IN THE PROSECUTION AGAINST THE DEFENDANT-APPELLEE UPON THE AUTHORITY OF §4549.13, §4549.14, §4549.16, O.R.C., AND EVIDENCE RULE 601(C)."

II.

{¶13} We will proceed in addressing Appellant's second assignment of error first, as we find it dispositive herein.

**{¶14}** In the second assignment of error, the State maintains the trial court erred in granting Appellant's motion to suppress finding Captain Hilles incompetent to testify as his police cruiser was not marked and equipped with lights as required by the provisions of R.C. 4549.13, on the authority of R.C. 4549.14 and Evidence Rule 601(C).

**{¶15}** Initially, we note, the decision to allow a witness to testify rests within the sound discretion of the trial court, and will not be overturned absent an abuse of that discretion. *Waganheim v. Alexander Grant & Co.* (1983), 19 Ohio App.3d 7. Abuse of discretion connotes more than an error of law or of judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151.

**{¶16}** Evidence Rule 601(C) provides,

**{¶17}** "Every person is competent to be a witness except:

**{¶18}** "***

**{¶19}** "(C) An officer, while on duty for the exclusive or main purpose of enforcing traffic laws, arresting or assisting in the arrest of a person charged with a traffic violation punishable as a misdemeanor where the officer at the time of the arrest was not using a properly marked motor vehicle as defined by statute or was not wearing a legally distinctive uniform as defined by statute."

**{¶20}** R.C. 4549.13 reads,

**{¶21}** "Any motor vehicle used by a member of the state highway patrol or by any other peace officer, while said officer is on duty for the exclusive or main purpose of enforcing the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, shall be marked in some distinctive manner or color and

shall be equipped with, but need not necessarily have in operation at all times, at least one flashing, oscillating, or rotating colored light mounted outside on top of the vehicle. The superintendent of the state highway patrol shall specify what constitutes such a distinctive marking or color for the state highway patrol."

{¶22} R.C. 4549.14 provides,

{¶23} "Any officer arresting, or participating or assisting in the arrest of, a person charged with violating the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, such officer being on duty exclusively or for the main purpose of enforcing such laws, is incompetent to testify as a witness in any prosecution against such arrested person if such officer at the time of the arrest was using a motor vehicle not marked in accordance with section 4549.13 of the Revised Code."

{¶24} Captain Hilles testified at the December 26, 2012 Hearing,

{¶25} "The Court: Now, who put that, on the Exhibit, who put the word unmarked on there?  Was that you or the manufacturer or whose idea was that?

{¶26} "A. I'm sorry on the web page, Your Honor?

{¶27} "The Court: Well, why don't you show him the Exhibit Mr. Morris.

{¶28} "Q. Defendant's Exhibit 1, I think it is - -.

{¶29} "The Court: At the top, it says unmarked.  Is that your creation or is that the manufacturer's or none of the above?

{¶30} "A. That's our nickname for it, Your Honor.

{¶31} "The Court: Okay, So, that was done by the Alliance Police Department?

{¶32} "A. Correct.

{¶33} "Q. And the - - the reason for that is what?

{¶34} "A. We wanted to - - when we put this out to the public, we wanted to make them aware that this car was different from our normal police cars. Ah, we nicknamed it unmarked because when the officer that came up with this came up with the idea - - the plan was to make it marked differently than the other cars for traffic specifically to be a deterrent. So, when he wanted the name unmarked it was not [inaudible].

{¶35} "* * *

{¶36} "Q. Is it lettered?

{¶37} "A. Yes, it has the word police across the front fender in ah silver and black letters on both sides, the driver and passenger.

{¶38} "Q. And what are the size of ah, the word police?

{¶39} "A. A little over 30 inches long.

{¶40} "Q. And the height?

{¶41} "A. I believe it's around three inches tall."

{¶42} Tr. at 6-9.

{¶43} On Cross-examination Captain Hilles testified,

{¶44} "Q. Captain Hilles, previously you testified on September 9th or a hearing on November 30th concerning Mr., ah, Schneller's traffic stop that - - on September 9th, you were on, ah, exclusive duty for the main purpose of enforcing motor vehicle traffic laws [inaudible]?

{¶45} "A. I believe so. I was on traffic duty, the OVI [inaudible].

{¶46} "Q. You said that the time and you would agree with that, correct?

{¶47} "A. I don't know if I said those exact words but I was definitely [inaudible].

**{¶48}** "Q. I'm sorry - - is it that you're on duty for traffic enforcement on September 9th, 2012?

**{¶49}** "A. Right.

**{¶50}** "* * *

**{¶51}** "Q. Now, this car 99, does not bear any or have any Alliance Police crest on it does it indicates - - or a shield - - the badge - - shield on it?

**{¶52}** "A. No.

**{¶53}** "Q. Okay.  It doesn't have that? The other marked cars for traffic enforcement all have that shield, correct?  To your knowledge?

**{¶54}** "A. I know the cruisers - - the sedans have a small little emblem on the front fender.  I'm not sure about the K-9 car.  I know the - -  I don't know about - - I don't know about car 40 either.

**{¶55}** "Q. Okay.  Certainly, the majority of marked cruisers all bear the crest?

**{¶56}** "A. The sedans have the crest, yes.

**{¶57}** "Q. Okay.  This particular car here - - this 2009 Charger that you in - - indicated  is car 99, this was in fact, you've already testified to this but this was the vehicle you were using on September 9th, 2012 when you initiated the traffic stop on Andrew Schneller?

**{¶58}** "A. Yes, sir.

**{¶59}** "Q. Okay.  And it is - - the paint on it is jet black, is that right?

**{¶60}** "A. Just black.

**{¶61}** "Q. Very black - - very dark?

**{¶62}** "A. Black is without color [inaudible].

**{¶63}** "Q. Your Honor, can I approach the witness?

**{¶64}** "The Court: Sure. Yes, you may.

**{¶65}** "Mr. Robertson: Thank you, Your Honor.

**{¶66}** "Q. I'm going to hand you what's been marked as Defendant's Exhibit Two, can you identify that?

**{¶67}** "A. Ah, this is a - - part of a picture of our cruiser in the garage downstairs.

**{¶68}** "Q. Okay, when you say cruiser, for the record, are you looking at car - - ?

**{¶69}** "A. Car 99.

**{¶70}** "Q. This is the - - the one that's labeled unmarked on the website, correct?

**{¶71}** "A. That's the one we've nicknamed unmarked.

**{¶72}** "Q. Okay. So, that is that car and that's the car you were operating that night, correct?

**{¶73}** "A. That is correct.

**{¶74}** "Q. All right. And it's certainly does - - does not have any police on the back quarter panel or on the side like the other marked cars?

**{¶75}** "A. It does have it on the side - - on the - - .

**{¶76}** "Q. Not the quarter panel though?

**{¶77}** "A. No, it's the side of the car though.

**{¶78}** "Q. Okay. The front quarter panel it - - it says police, correct?

**{¶79}** "A. That's correct.

**{¶80}** "Q. But not on the side, like the regular marked cruisers?

**{¶81}** "A. It is on the side - - you mean the door? [Inaudible].

**{¶82}** "Q. I'm talking about the front quarter panel?

**{¶83}** "A. That's correct.  That's the side of the vehicle, sir.

**{¶84}** "* * *

**{¶85}** "Q. On September 9th, then you were, I believe you testified when you, ah, were on or near 23rd Street, that you were sitting with no lights out and it was dark out correct?

**{¶86}** "A. Yes, when the Defendant passed me.

**{¶87}** "Q. So, the vehicle that you have - - the picture that's in front of you as Exhibit Number Three, would be very accurate as to how the cruiser looked in the dark, correct?

**{¶88}** "A. When I was parked.  Not when I was moving.

**{¶89}** "Q. Right.  I'm just asking you to look at that picture.  There's no lights on it, right?

**{¶90}** "A. No.

**{¶91}** "Q. It's dark.  It's a picture of car 99 and it's - - in the dark right?

**{¶92}** "A. It's in the garage.  The picture's dark.  I don't think it's in the dark, I mean it's your - - your picture quality.  But it was daytime when you took the picture - -.

**{¶93}** "Q. But, yea, certainly that may - - it may have looked that was on September 9th is what I'm trying to get at?

**{¶94}** "A. When I was parked.

**{¶95}** "Q. Correct.

**{¶96}** "A. Yes.

**{¶97}** "Q. That's - -.

**{¶98}** "A. I would agree.

{¶99}   "Q. That's what I'm trying to get at.  Thank you officer.  Ah, and in fact when you look at Exhibit Number Three, you see that it has a regular license plate on it correct?

{¶100}  "A. Yes, it does.

{¶101}  "Q. Nothing distinguishes that that it is a police cruiser, correct?

{¶102}  "A. Ah, there's an overhead light - - .

{¶103}  "Q. On the front - - on the front license plate.

{¶104}  "A. On the front, no.

{¶105}  "Q. If - - okay.  So, it doesn't say car 99?

{¶106}  "A. [Inaudible].

{¶107}  "Q. Um, this may be a better picture of it, Defendant's Exhibit Four, that displays the license plate, which is not what you have on the regular marked cruisers, correct?

{¶108}  "A. That is correct.

{¶109}  "Q. Okay.  So, it is just as it would be an ordinary plate that an ordinary citizen might be using, correct?

{¶110}  "A. It looks the same, yes.

{¶111}  "Q. It looks the same.  Okay.  I'm going to hand Defendant's Exhibit Number Five.

{¶112}  "The Court: Excuse me.

{¶113}  "Q. What does to be - - appear to be a picture of?

{¶114}  "A. The back of the car.

{¶115}  "Q. Of car 99?  The one you were operating on September 9th 2012?

**{¶116}**  "A. Yes.

**{¶117}**  "Q. Is there anything that says police on the back of that car?

**{¶118}**  "A. No, sir.

**{¶119}**  "Q. Now, on the regular marked sedans that are used for traffic enforcement in the City of Alliance, it does in fact spell police on the back, correct?

**{¶120}**  "A. Yea, we just started that about two years ago.

**{¶121}**  "Q. And I'm going to show Defendant's Exhibit Six and that would be one of those regular marked sedans with police boldly put on the back, correct?

**{¶122}**  "A. Yes.

**{¶123}**  "Q. Going to also hand you Defendant's Exhibit - - this would be number seven, what does that appear to be a picture of?

**{¶124}**  "A. Ah, one of our other police cruisers.

**{¶125}**  "Q. Okay.  A- - a - - a - - a police cruiser that is a sedan that would be marked - - a marked cruiser - - would that?

**{¶126}**  "A. My opinion is that they're all marked but yes, this is a differently marked cruiser. [Inaudible].

**{¶127}**  "Q. Okay.  That is the - - that is the standard marked cruiser for the Alliance Police Department, correct?  Sedan?

**{¶128}**  "A. That's how the majority of them are marked not all of them.

**{¶129}**  "Q. Okay.  And - - and that car there on number seven would be and could be used then for, ah, traffic enforcement exclusively, correct?

**{¶130}**  "A. Are you asking me to make that call of whether or not that - - okay, I thought that was the Judge's job. [Inaudible].

**{¶131}** "Q. No, I'm - - I'm - - I'm having you look at Exhibit seven, which is a marked police car.

**{¶132}** "A. Well I can't - - I don't think I'm allowed to determine whether or not it can be used for traffic control.  I can tell you that - - .

**{¶133}** "Q. It's marked?

**{¶134}** "A. It's a marked police and it's not - - .

**{¶135}** "Q. And it's clearly marked with police on the side, right?  On both doors, correct?

**{¶136}** "A. On both doors. [Inaudible].

**{¶137}** "Q. Did you bother to measure, Captain Hilles, knowing that today's hearing was happening, did you happen to measure the size of the word police on, um, Exhibit Number Seven?

**{¶138}** "A. No, I did not.

**{¶139}** "Q. How big is that?

**{¶140}** "A. I don't know.

**{¶141}** "Q. How - - how big do you think that would be that is looking at that picture?

**{¶142}** "A. I don't know.

**{¶143}** "Q. It's much bigger than what's on - - what is considered the unmarked traffic car - - car 99 correct.

**{¶144}** "A. It's smaller, yes.

**{¶145}** "Q. It also has illuminating paint on it that says 9-1-1 when people drive by so that you would know it would be a police cruiser, correct?

**{¶146}** "A. I don't think the 9-1-1- is illuminating.  No, it's the police car, it's not just the word police.

**{¶147}** "Q. But it has illuminating paint on it correct?

**{¶148}** "A. On the 9-1-1-, yes.

**{¶149}** "Q. Yea.

**{¶150}** "A. Not on the [inaudible].

**{¶151}** "Q. Okay.  So, and it bears the shield and it - - and the - - the size of police would probably be oh, maybe 20 inches each - - each letter.

**{¶152}** "A. I have no idea.

**{¶153}** "Q. In length.  Spans both doors though doesn't it?

**{¶154}** "A. Yes.  [Inaudible].

**{¶155}** "Q. Okay.  So, it's not just the front left quarter panel where the police [inaudible] like on car 99?

**{¶156}** "A. Correct.

**{¶157}** "* * *

**{¶158}** "Q. I, ah, I asked you the - - um, a - - a question about the color that it was black and you answered that some respect that certainly car 99 is black, is that right?

**{¶159}** "A. Yes, it's black car.

**{¶160}** "Q. Okay.  And it's, ah, not certainly a distinctive color from the other police cruisers?  Is it?

**{¶161}** "The Court: Black is the absence of all color.  From my art - - .

**{¶162}** "A. There - - there are two other cruisers that are all black as well.

**{¶163}** "Q. Yea, those, ah, they - - they bear no markings on them?  The detective cars?

**{¶164}** "A. Ah, car 40's all black and car 46 is all black.

**{¶165}** "Q. So, they have no - - no markings whatsoever?

**{¶166}** "A. No.  They have markings on them just like 99 I believe."

**{¶167}** Tr. at 12-15; p. 16-20; p. 23-24.

**{¶168}** Based upon the testimony offered at the hearing on Appellee's motion to suppress, we conclude the trial court did not abuse its discretion in finding Captain Hilles incompetent to testify as the arrest was made using a motor vehicle not marked in accordance with R.C. 4549.13.  Furthermore, Captain Hilles testified he was faced in the opposite direction of traffic, positioned behind a tree, in the grass, and not on the berm of the road; therefore, any markings on the side of the police cruiser would not have been visible, if at all, until Appellant immediately passed the cruiser.

**{¶169}** Appellant's second assignment of error is overruled.

I.

**{¶170}** Based upon our analysis and disposition of the State's second assignment of error, we find the State's first assignment of error moot under the two issue rule.

**{¶171}** The judgment of the Alliance Municipal Court is affirmed.

By: Hoffman, J.

Gwin, P.J.  and

Delaney, J. concur

_____
HON. WILLIAM B. HOFFMAN


_____
HON. W. SCOTT GWIN


_____
HON. PATRICIA A. DELANEY

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO                              :
                                          :
    Plaintiff-Appellant                   :
                                          :
-vs-                                      :               JUDGMENT ENTRY
                                          :
ANDREW A. SCHNELLER                        :
                                          :
    Defendant-Appellee                    :               Case No. 2013CA00004


For the reason stated in our accompanying Opinion, the December 26, 2012

Judgment Entry entered by the Alliance Municipal Court is affirmed.  Costs to the State

of Ohio.


_____
HON. WILLIAM B. HOFFMAN


_____
HON. W. SCOTT GWIN


_____
HON. PATRICIA A. DELANEY