[Cite as *State v. Lamp*, 2021-Ohio-2354.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JUSTIN M. LAMP,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 CO 0001**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2019 CR 32

**BEFORE:**
Carol Ann Robb, Gene Donofrio, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Vito Abruzzino*, Prosecutor, *Atty. Tammie Jones,* Assistant Prosecutor*,* 105 South Market Street, Lisbon, Ohio 44432, for Plaintiff-Appellee and

*Atty. Alexander Keane*, P.O. Box 92, Canfield, Ohio 44406 for Defendant-Appellant.

Dated:  June 30, 2021

**Robb, J.**

{¶1} Defendant-Appellant Justin M. Lamp appeals from his conviction entered in the Columbiana County Common Pleas Court after a jury found him guilty of failure to comply with an order or signal of a police officer. He contends the court should have granted his motion to suppress which alleged the plain clothes detectives in unmarked vehicles were incompetent to testify as witnesses as they were on duty for the main purpose of enforcing traffic laws when Appellant was arrested. Appellant also argues the court improperly admitted other acts evidence by allowing detectives to testify they were looking for Appellant that day as a suspect in a theft investigation and by allowing the state to cross-examine Appellant about past convictions. For the following reasons, the trial court's judgment is affirmed.

STATEMENT OF THE CASE

{¶2} On February 13, 2019, Appellant was indicted for failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B), which entails operating a motor vehicle so as to willfully elude or flee from a police officer after receiving a visual or audible signal to stop. The offense was charged as a third-degree felony due to the additional allegation that the operation of the motor vehicle caused a substantial risk of physical harm to persons or property.

{¶3} On May 7, 2019, Appellant filed a motion to suppress and alleged the state could not show the detective had cause to stop his vehicle as the detective was not authorized to stop him and incompetent to testify under R.C. 4549.14 as he was in plain clothes and driving an unmarked vehicle. After Appellant failed to appear for two suppression hearings, the hearing was eventually held on November 25, 2019. Defense counsel noted Appellant pled no contest to the underlying misdemeanors involved in the stop. The court reviewed the transcript of the preliminary hearing regarding the officer's observations of the vehicle and equipment violations and asked the state to present testimony on the cause for the stop and the competency issue. The state presented the testimony of two detectives from the Columbiana County Sheriff's Department.

**{¶4}** Detective Haugh, who was not the arresting officer, testified at the hearing first. He was investigating stolen trailers and a pickup truck and considered Appellant a suspect in the thefts. (Hrg.Tr. 13-14). On January 7, 2019, he was canvassing the area, in plain clothes and an unmarked car, with the assistance of other officers, including Detective Walker. He said they were looking for Appellant but not for the purpose of traffic patrol. (Hrg.Tr. 14-15, 18). Detective Haugh hoped to find Appellant in a stolen vehicle and intended to stop him with his unmarked police vehicle if there was a traffic violation. (Hrg.Tr. 14-15, 25-27). He heard Detective Walker report his pursuit of Appellant on the radio and arrived after Appellant stopped in his mother's driveway.

**{¶5}** Detective Walker testified he was assigned to felony investigations and the drug taskforce. He confirmed Detective Haugh was conducting a theft investigation and asked for a team to drive around the Hanover Township area looking for stolen trailers and pickup trucks. (Hrg.Tr. 13, 36). They were also looking for Appellant as a person of interest in the thefts. Detective Walker said they knew Appellant had a suspended driver's license as Detective Haugh printed his record in the course of the investigation; also, Detective Walker stopped a vehicle three months earlier and found Appellant driving with a suspended license. (Hrg.Tr. 37).

**{¶6}** Around noon on January 7, 2019, Detective Walker left the sheriff's office with the purpose of looking for stolen trailers and trucks and hoping to spot Appellant driving a stolen truck or hauling a stolen trailer. (Hrg.Tr. 38, 41-42). This detective said he did not drive the roads that day with the primary purpose of patrolling for traffic violations. (Hrg.Tr. 38). He was in plain clothes and driving an unmarked vehicle.

**{¶7}** Shortly after leaving the sheriff's office, Detective Walker passed the same make and model of vehicle as when the detective stopped Appellant three months earlier; he recognized Appellant as the driver and knew he was driving with a suspended license. (Hrg.Tr. 37-39, 49). When he looked in his rearview mirror, he noticed Appellant "had a taillight out. And then as he hit his brakes, I saw that he had a brake light out also." (Hrg.Tr. 39). Detective Walker turned his vehicle around and went in search of Appellant, eventually spotting Appellant's vehicle in an oil well access drive facing the road. (Hrg.Tr. 39-40, 43). The detective recognized the passenger as the mother of Appellant's children.

Case No. 20 CO 0001

**{¶8}** When the detective pulled next to the vehicle, Appellant looked at him and accelerated from the access drive at a fast pace. The detective pulled out and activated his lights and siren. (Hrg.Tr. 40). His unmarked vehicle had a light bar in the windshield and lights in the grill (along with side and rear lights). (Hrg.Tr. 34, 44). At this point in the hearing, the prosecutor noted there would be no questions as to the fleeing offense due to the scope of the motion.

**{¶9}** After the hearing, the parties filed briefs on Appellant's motion. Appellant's brief in support of suppression said the officer in plain clothes lacked authority to use his unmarked vehicle to stop Appellant for a traffic violation (noting the detective did not testify to facts showing reasonable suspicion to stop him for a theft investigation). Applying R.C. 4549.14, Appellant argued the officer was on duty exclusively to enforce or for the main purpose of enforcing motor vehicle or traffic laws and thus was incompetent to testify as a witness against Appellant because the unmarked vehicle did not satisfy the preceding statute, R.C. 4549.13. He argued the *Lagese* case from this district was distinguishable and concluded Detective Walker was patrolling with the hope of catching Appellant violating a traffic law and thus his main purpose was to enforce traffic laws. The state responded that Detective Walker was on duty to engage in his functions as a detective investigating stolen motor vehicles, not for the main purpose of enforcing traffic laws.

**{¶10}** On January 2, 2020, the trial court overruled Appellant's motion to suppress, after reviewing the law on police officer competency and the testimony. The court pointed out the marked car and uniform requirements only apply to those police officers engaged exclusively in or for the main purpose of traffic enforcement and concluded Detective Walker was not on duty for this purpose but was working cooperatively with Detective Haugh in his investigation of stolen trucks and trailers. It was pointed out the inquiry involves the main purpose for his whole period of duty, not just when he encountered Appellant.

**{¶11}** At the jury trial, some of this same testimony was presented. Detective Haugh testified he was a plain clothes detective who was investigating some theft offenses, including a truck, a utility trailer, and chainsaws. He named Appellant as his suspect. (Tr. 125). At the morning meeting on January 7, 2019, Detective Haugh asked a group to drive around the Hanover Township area where Appellant was known to

frequent; he said they were not out on the roads looking to run traffic. (Tr. 126-127, 144). He said Detective Walker joined the canvassing effort later than the others, but he was the one who encountered Appellant in a vehicle that belonged to Appellant's mother. (Tr. 128-129).

**{¶12}** Detective Haugh said he was initially miles away and tried to reach the area in order to deploy stop sticks. (Tr. 133). When he arrived, the vehicle was in the driveway of the residence of Appellant's mother and Appellant was already secured in handcuffs. (Tr. 134-135). He described the roads traveled by Detective Walker in pursuing Appellant: some were "barely a cowpath" and some were "chip and seal"; there were "twisty, bendy, gravelly, hilly" back roads where the speed limit was 55 mph unless otherwise posted; speeds over 75 mph would be very unsafe; and there was a potential for vehicle and pedestrian traffic. (Tr. 129-131).

**{¶13}** Detective Haugh said he and Detective Walker were both driving unmarked police vehicles, which were outfitted with a siren and a full light bar on the windshield plus lights near the license plate, sides, and back. (Tr. 123). He never had an issue with someone failing to realize it was a police vehicle during past stops with the lights and siren. (Tr. 124-125). He attested the unmarked cars do not have radar and the assembled group did not take to the roads that day with the intent to run traffic. (Tr. 143-144).

**{¶14}** Detective Walker testified next. He said he attended the morning meeting, received information on Detective Haugh's theft investigation with Appellant as a suspect, and was instructed to patrol the roads looking for stolen trailers, stolen trucks, and Appellant. (Tr. 159). He was the last to leave as he had office tasks to complete on other matters. (Tr. 160). He turned on a back road in Hanover Township and passed Appellant driving the opposite way in a tan GMC.

**{¶15}** In his rearview mirror, he noticed the tail light was "out," and when Appellant hit the brakes, the detective noticed the brake light was not working. (Tr. 162). He also knew Appellant's driver's license was suspended. (Tr. 163). Detective Walker turned his vehicle around and eventually found the tan vehicle in an oil well access drive facing the road. The detective pulled next to Appellant and recognized the passenger as the mother

of Appellant's children. (Tr. 164). Appellant looked directly at the detective and sped away with his car throwing gravel. (Tr. 163, 171).

**{¶16}** Detective Walker testified he followed Appellant and activated his lights and siren. (Tr. 165). He described his unmarked police vehicle as a Chevy Equinox with a standard siren and with lights on the dashboard running the length of the windshield, on the grill, and on the sides and back. (Tr. 160-161). Appellant did not stop his vehicle.

**{¶17}** The detective approached close behind Appellant's vehicle, which he paced at speeds in excess of 75 mph on a gravelly, winding road. (Tr. 172-173). They passed an oncoming vehicle. Appellant then ran a stop sign and slid through a left hand turn where the cross-traffic had no stop sign. (Tr. 175-176). Appellant turned again onto a hilly road, and the detective said Appellant was airborne or almost airborne when cresting some of the hills. (Tr. 176, 179).

**{¶18}** As Appellant's vehicle started slowing, he made strange movements in his seat and then pulled into his mother's driveway. (Tr. 180-181). The pursuit spanned over 5.5 miles and lasted 7 minutes. (Tr. 182). The officer ran to the car and arrested Appellant. Various items were recovered from the vehicle: a syringe between the driver's seat and the console, three razor blade knives, a head lamp, a pin to a trailer hitch, and a pill bottle in the passenger's name for buprenorphine naloxone (used for opioid addiction). (Tr. 186). The passenger removed drugs from her vagina, a mixture of heroin and fentanyl. (Tr. 208).

**{¶19}** Appellant testified in his own defense. He said the passenger was the mother of two of his children. He explained Detective Walker did not appear to be driving a police car or wearing a uniform when the detective pulled into the access drive. (Tr. 228-229). Appellant said he was very familiar with Detective Walker and had a long history with him, claiming the detective "threatened to shut me up in the past." (Tr. 231-232). Appellant acknowledged he thereafter saw the lights and heard the siren and claimed: he did not believe the detective was on-duty; he believed the stop was illegal; he did not want to stop on a back road; and he wanted witnesses for his safety. (Tr. 233-234, 249, 262). He said the transmission in the vehicle he was driving was broken and the vehicle could not have reached high speeds (estimating it could have reached 50 mph only if he was going downhill). (Tr. 232, 235).

{¶20} The jury found Appellant guilty of failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B). On the element needed to elevate the offense to a felony, the jury filled out an additional verdict form showing they did not find Appellant's operation of the motor vehicle caused a substantial risk of serious physical harm to persons or property.

{¶21} The trial court entered a conviction for the first-degree misdemeanor and imposed a jail sentence of 180 days, a fine of $500 plus costs, and a driver's license suspension of 3 years (effective from the date of the January 15, 2020 sentencing hearing). (1/16/20 Sent.J.E.). Appellant was released the day after sentencing as his jail time credit exceeded the sentence. (1/16/20 Jail Time Credit J.E.).

{¶22} Appellant filed a timely notice of appeal. Appellant's brief was filed October 13, 2020. In December, the state moved to dismiss the appeal claiming the appeal was moot. The state said Appellant completed the jail sentence, voluntarily completed his sentence without seeking a stay of the fine or license suspension, and failed to allege a collateral disability. The state did not specify the fine and the costs had been paid or explain how the license suspension of 3 years was complete. Furthermore, Appellant responded by pointing out he was challenging the conviction, not the sentence, and noted a conviction would have collateral effects on insurance, employment, qualification for licensure, and an enhanced class of license suspension under R.C. 2921.331(E) if he commits the offense again.

{¶23} On January 26, 2021, this court overruled the state's motion to dismiss finding the appeal was not moot as the conviction carried ongoing and collateral consequences and also the terms of the sentence were not fulfilled. The state then filed the appellee's brief.

<u>ASSIGNMENT OF ERROR ONE: COMPETENCY OF OFFICERS</u>

{¶24} Appellant sets forth two assignments of error, the first of which contends:

"The Trial Court erred by failing to find incompetent and suppress testimony from officers in unmarked vehicles."

{¶25} A motor vehicle used by a peace officer while "on duty for the exclusive or main purpose of enforcing the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, shall be marked in some distinctive manner or

color and shall be equipped with * * * at least one flashing, oscillating, or rotating colored light mounted outside on top of the vehicle." R.C. 4549.13. The next statute explains:

> Any officer arresting, or participating or assisting in the arrest of, a person charged with violating the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, such officer being on duty exclusively or for the main purpose of enforcing such laws, is incompetent to testify as a witness in any prosecution against such arrested person if such officer at the time of the arrest was using a motor vehicle not marked in accordance with section 4549.13 of the Revised Code.

R.C. 4549.14.

**{¶26}** As to uniforms, the subsequent section contains the same language but ends with: "if such officer at the time of the arrest was not wearing a distinctive uniform in accordance with section 4549.15 of the Revised Code." R.C. 4549.15, citing R.C. 4549.15 (every peace officer shall wear a distinctive uniform while on duty for the exclusive or main purpose of enforcing motor vehicle or traffic laws, if the offense is a misdemeanor). Combining the uniform and marked car requirements, Evid.R. 601 states every person is competent to be a witness but lists exceptions, including:

> An officer, while on duty for the exclusive or main purpose of enforcing traffic laws, arresting or assisting in the arrest of a person charged with a traffic violation punishable as a misdemeanor where the officer at the time of the arrest was not using a properly marked motor vehicle as defined by statute or was not wearing a legally distinctive uniform as defined by statute.

Former Evid.R. 601(C), now (A)-(B),(D) (as of July 1, 2020).

**{¶27}** The marked car requirement was "certainly not intended to inhibit all police officers, except those primarily on traffic duty, from arresting a person violating traffic or motor vehicle laws." *State v. Huth*, 24 Ohio St.3d 114, 115-16, 493 N.E.2d 961 (1986). Where the statute and the rule ask whether the officer was "on duty exclusively or for the main purpose of enforcing" motor vehicle or traffic laws, the laws refer to "the officer's main purpose for his whole period of duty and not to his duty during the apprehension and arrest of the suspect." *Id.* at 116.

**{¶28}** In general, the "determination of competency is within the sound discretion of the trial court and will not be reversed on appeal absent a clear abuse of discretion." *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 100 (applying Evid.R. 601(A), child competency). In a Fifth District case where the defendant raised the competency issue in a motion to suppress, the court applied the abuse of discretion standard of review as the decision on whether to allow a witness to testify. *State v. Schneller*, 5th Dist. Stark No. 2013CA00004, 2013-Ohio-2976, ¶ 8-9, 15. *See also State v. McClellan*, 3d Dist. Allen No. 1-09-21, 2010-Ohio-314, ¶ 48-49 (applying the abuse of discretion standard to the decision to allow an officer to testify at suppression hearing and a trial).

**{¶29}** In a case cited by the parties, the incompetency matter was also raised via a suppression motion, and this court applied the mixed standard of review for suppression motions, which entails upholding the factual findings if supported by competent, credible evidence and reviewing the application of the law de novo. *State v. Lagese*, 7th Dist. Mahoning No. 11 MA 198, 2013-Ohio-5773, ¶ 6. Regardless, we do not substitute our judgment for the trial court's decision on factual matters, and a trial court does not abuse its discretion if there was some reliable, credible evidence supporting the factual findings. *See, e.g., State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, ¶ 33. *See also State v. Fitzgerald*, 9th Dist. Summit No. 22381, 2005-Ohio-2411, ¶ 19 (stating the court will not overturn a decision on officer competency absent an abuse of discretion and then concluding the trial court's decision was supported by competent, credible evidence).

**{¶30}** In *Lagese*, officers were patrolling in an unmarked car as part of a street crimes unit; they stopped a defendant for failing to signal a turn into a driveway and arrested him for possession of crack cocaine. We upheld the refusal to suppress the officer's testimony, concluding they were not on duty for the main purpose of enforcing traffic or motor vehicle laws. *Lagese*, 7th Dist. No. 11 MA 198 at ¶ 10.

**{¶31}** The Eighth District reviewed a case where a detective testified he was primarily working for the vice unit "patrolling looking for drug activity" but stopped the defendant for turning right on red during restricted hours. The court concluded: "apprehension of drug activity — not traffic enforcement — was the main purpose for his

whole period of duty, and he was therefore not required to be in a properly marked vehicle and uniform at the time of the traffic stop in order to be competent to testify at trial." *City of Cleveland v. Davis*, 8th Dist. Cuyahoga No. 106780, 2018-Ohio-4706, ¶ 15.

{¶32} Appellant contends the detectives had a plan to stop his vehicle if they found him driving, which should equate to being on duty for the main purpose of enforcing traffic laws, even though the intent only applied to enforcing a traffic law against him. He states the act of patrolling for him with knowledge of his suspended driver's license makes this case distinguishable from cases where task force members are simply patrolling for non-traffic reasons and happen to observe a traffic offense.

{¶33} The state argues it was reasonable for the trial court to find the detectives' main purpose was not to enforce traffic laws as they were searching for stolen trucks and trailers. The state emphasizes the purpose for an officer's entire shift must be considered, not just the purpose when a defendant was encountered while violating traffic laws.

{¶34} Detective Haugh was working on a theft investigation. Detective Walker was working felonies and assigned to a drug task force; he was also providing assistance with Detective Haugh's theft investigation on the relevant day. The detectives testified their primary purpose on the day in question was not to enforce traffic laws. They decided to canvass an area to see if they could spot any stolen trailers or trucks. The items stolen were vehicles, but the investigation did not relate to the enforcement of motor vehicle or traffic law.

{¶35} The detectives were also hoping to come across Appellant, who was a suspect in the theft investigation. If they found him outside of a business or walking along a road, they could have initiated a voluntary encounter to ask about his knowledge of certain thefts, which would have been unrelated to traffic or motor vehicle laws. Although the detectives were hoping he would be driving a stolen truck or hauling a stolen trailer, the stopping of a vehicle because it is known to be stolen would not entail enforcement of a motor vehicle or traffic law.

{¶36} The fact the detectives knew Appellant's license was suspended did not mean they were on duty exclusively to enforce or for the main purpose of enforcing traffic laws. Detective Haugh's acknowledgement that he would have initiated a traffic stop if he saw Appellant commit a traffic violation did not transform the detectives' purpose for

the duration of their shifts. As Detective Haugh pointed out, if he observes a driver do "something real stupid" during his commute to the sheriff's office to work on his investigations, he will stop the vehicle in his unmarked car even though not on duty with a purpose to perform traffic related functions. We also note Detective Haugh did not participate in Appellant's arrest as Appellant was handcuffed by Detective Walker by the time Detective Haugh arrived.

**{¶37}** Finally, Detective Walker saw Appellant committing multiple motor vehicle or traffic law violations and decided to stop his vehicle, but this does not mean Detective Walker was on duty for the exclusive or main purpose of enforcing motor vehicle traffic laws. The question is "the officer's main purpose for his whole period of duty and not * * * his duty during the apprehension and arrest of the suspect." *Huth*, 24 Ohio St.3d at 116. Detective Walker was assigned to felonies and the drug task force. One of his purposes while on duty on the day of the encounter with Appellant was to assist in a theft investigation of stolen vehicles with a hope of finding Appellant with a stolen vehicle. (At trial, he even noted he was the last to leave for the canvassing that day as he had office tasks to complete in other matters.) The trial court reasonably concluded Detective Walker was not on duty for the main purpose of enforcing motor vehicle or traffic laws.

**{¶38}** As the trial court's decision was reasonable, supported by credible evidence, and not legally erroneous, this assignment of error is overruled.

<u>ASSIGNMENT OF ERROR TWO: OTHER ACTS EVIDENCE</u>

**{¶39}** Appellant's second assignment of error alleges:

"The trial court erred by admitting improper other acts evidence."

**{¶40}** The state filed a motion in limine asking the court to allow testimony, under Evid.R. 404(B), concerning the theft investigation in which Appellant was a suspect. The state said the testimony explained the officers' conduct and their investigative steps. Appellant filed an opposing motion in limine seeking to prohibit this testimony on uncharged misconduct and asked the court to preclude testimony revealing he was being investigated for stolen motor vehicles and trailers.

**{¶41}** At trial, the state asked Detective Haugh to "briefly, not in a lot of detail" describe the nature of his investigation on January 7, 2019. Without objection, the detective testified Appellant was a suspect in his investigation of stolen trucks and trailers

and he asked a group of deputies to drive around the area where Appellant lived. (Tr. 125-126). After Detective Haugh's testimony, the trial court noted the motions in limine had been previously discussed off the record; the court then placed on the record its finding that the existence of the theft investigation was relevant to motive under Evid.R. 404(B). The court observed there had been limited testimony on the topic and further testimony would be evaluated on a question-by-question basis. (Tr. 149).

**{¶42}** When Detective Walker testified, the state asked him to relay "a little bit about" his involvement in Detective Haugh's theft investigation on January 7, 2019. Detective Walker testified, without objection, to the existence of an investigation into stolen trucks and trailers in the western half of the county with Appellant as Detective Haugh's suspect. He then said they left the office to patrol the back roads in an attempt to locate stolen trailers, stolen trucks, and the suspect. (Tr. 159). On cross-examination, defense counsel had the detective clarify Appellant had not been charged with the thefts under investigation and was not in possession of stolen items when he was arrested. (Tr. 191-192).

**{¶43}** "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). "Thus, while evidence showing the defendant's character or propensity to commit crimes or acts is forbidden, evidence of other acts is admissible when the evidence is probative of a separate, nonpropensity-based issue. *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22. The rule contains a "nonexhaustive list of the permissible nonpropensity purposes for which other-acts evidence may be introduced." *Id.* at ¶ 26.

**{¶44}** A trial court is precluded as a matter of law from admitting improper character evidence under Evid.R. 404(B) but has discretion to admit other acts evidence which has a permissible purpose. *State v. Graham*, __ Ohio St. 3d __, 2020-Ohio-6700, __ N.E.3d __, ¶ 72, citing *Hartman*, 161 Ohio St.3d 214 at ¶ 22 ("the admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law"), citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 17 (the rule bars evidence to prove character in order to demonstrate conforming conduct, but it gives the trial court

discretion to admit other acts evidence for a permissible other purpose). The court employs:

> a three-part analysis for determining the admissibility of other-acts evidence: to be admissible, (1) the evidence must be relevant, Evid.R. 401, (2) the evidence cannot be presented to prove a person's character to show conduct in conformity therewith but must instead be presented for a legitimate other purpose, Evid.R. 404(B), and (3) the probative value of the evidence cannot be substantially outweighed by the danger of unfair prejudice, Evid.R. 403.

*Graham*, __ Ohio St. 3d __, 2020-Ohio-6700 at ¶ 72.

**{¶45}** The relevancy determination in this context asks "whether the evidence is relevant to the particular purpose for which it is offered" which must be one other than character or propensity. *Hartman*, 161 Ohio St.3d 214 at ¶ 26. Evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination * * * more probable or less probable than it would be without the evidence." Evid.R. 401. *See also Hartman*, 161 Ohio St.3d 214 at ¶ 24; Evid.R. 402 ("Evidence which is not relevant is not admissible.").

**{¶46}** If the evidence is not presented for character and has a permissible purpose under Evid.R. 404(B), then the trial court uses its discretion to determine whether the probative value "is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." *Id.* at ¶ 29-30, citing Evid.R. 403(A). The probative value and the unfairness of any prejudice can depend on the degree to which the fact is truly in dispute and whether it can be shown with alternative evidence. *Hartman*, 161 Ohio St.3d 214 at ¶ 31-32.

**{¶47}** Appellant contends the testimony disclosing he was a suspect in a theft investigation has little probative value and a high risk of unfair prejudice due to character-based inferences. He recognizes the state's need to prove the element of his willful intent to flee but says they should have just relied on the inferences of his intent from other evidence, including his familiarity with the detective he saw pull next to him in the access drive, the clear lights and sirens on the detective's vehicle, and the multiple opportunities he had to stop his vehicle during the seven-minute pursuit.

**{¶48}** The state responds the testimony that Appellant was a suspect in a theft investigation was relevant to Appellant's motive for fleeing and provided background information on the officer's conduct with no purpose to show Appellant's character. The state points to the limited inquiry it conducted on the topic, compared to the more extensive inquiry conducted by the defense.

**{¶49}** "Explaining police actions can be a valid basis for introducing other-acts evidence." *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, 123 N.E.3d 955, ¶ 156. But, if the state uses evidence the defendant was suspected of one offense to explain why he was suspected in the case at bar, then the other acts evidence is improperly being used to show propensity absent some other explanation. *Id.* at ¶ 157. Here, the state was not using the detective's testimony about Appellant as the suspect in the theft investigation to show why the state believed Appellant was the person who committed the failure to comply offense. Rather, the state was using the detective's theft investigation to show why the detectives were driving around looking for Appellant and potentially why he fled from the traffic stop. As ordered by the trial court, the state limited the questioning on the topic and did not ask the detective to go into specifics.

**{¶50}** Contrary to a suggestion in Appellant's brief, motive is not the same as intent. Motive involves the reason for committing the offense. *Id.* at ¶ 48 (the other acts evidence of motive need not be similar to the offense being tried; e.g., a defendant's motive for theft might be to obtain money to buy drugs). The fact that a person was sought for questioning by police during a theft investigation can be a reason why a person fled from a traffic stop on a particular day. Appellant did not own the vehicle he was driving; it belonged to his mother, and he eventually stopped in her driveway. In the vehicle Appellant was driving, the detective found a trailer hitch pin, a headlamp, and razor blade knives. He also found a syringe by Appellant's seat (and the passenger removed heroin with fentanyl from her vagina). Another reason a driver may flee is the presence of drugs in the car or in a driver's system, which would explain why the state asked Appellant in cross-examination whether he was on drugs when he encountered the officer.

**{¶51}** We also note Appellant intended to present evidence showing Detective Walker had some kind of long-standing personal problem with Appellant. The state filed a motion in limine to exclude evidence about a dispute from almost 30 years earlier, while

defense counsel voiced the dispute was pertinent. The details were discussed off the record. The court sustained the state's motion on the record.

{¶52} Yet, the state's motion did not seek to preclude Appellant from testifying to other claims about the detective, and Appellant testified: the detective used a personal vehicle to stop his sister when she was driving his car; he filed a report against the detective; the detective "threatened to shut [Appellant] up"; and Appellant did not want to stop in an area without witnesses as he feared the detective would shoot him. The fact the detective was assisting in a theft investigation as opposed to stalking Appellant for personal reasons would be a permissible use of other acts evidence in these circumstances. It also tended to counter the validity of Appellant's claimed motive for fleeing--emergency or defense-of-self. The list of permissible nonpropensity purposes in the rule for admitting other acts is nonexhaustive. *Hartman*, 161 Ohio St.3d 214 at ¶ 26.

{¶53} We also conclude the probative value of the evidence elicited by the state was not "substantially" outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Additionally, objections were not made at the pertinent points during the detectives' testimony, even after the court said Detective Walker's upcoming testimony would be evaluated on a question-by-question basis. The defense strategy shifted to ensure the detective acknowledged Appellant was not driving a stolen vehicle or charged in the thefts.

{¶54} Regardless, any "improper evidentiary admission under Evid.R. 404(B) may be deemed harmless error on review when, after the tainted evidence is removed, the remaining evidence is overwhelming." *Tench*, 156 Ohio St.3d 85 at ¶ 175 (finding harmless error in a capital case, where the state presented other acts evidence including evidence the defendant was a suspect in a prior robbery), quoting *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 32.

{¶55} In this case, the evidence overwhelmingly showed Appellant committed first-degree-misdemeanor failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B) by operating a motor vehicle so as to willfully elude or flee from a police officer after receiving a visual or audible signal to stop. The jury acquitted Appellant of the felony version of the offense, which tends to show the case was not tainted by testimony about Appellant being a suspect in a theft investigation. The

admission of the contested testimony was harmless in this case, and this alternative harmless error analysis also applies to the next argument.

**{¶56}** Under this assignment of error, Appellant also contests the probative value of allowing the state to question him about his criminal history, citing pages 240-245 of the transcript. Appellant suggests the elicitation of his prior criminal convictions represented improper other acts testimony.

**{¶57}** At the beginning of the Appellant's testimony, defense counsel asked: "Now, sir, we're not here to hide anything from the jury or say that, you know, you are pure as sparkling snow. You do have some prior criminal history; is that correct?" and "you have taken responsibility for those charges that you have had in the past; is that correct?" Appellant responded in the affirmative to both questions. (Tr. 228). He then relayed his claims about the arresting detective's vendetta against him and his belief the chase was personal rather than official.

**{¶58}** On cross-examination, the state referred to Appellant's testimony describing his criminal history and asked if he had "several prior convictions for criminal offenses" to which he responded, "Could be true, yeah." (Tr. 240). The state then recited: "you have convictions for offenses such as burglary, receiving stolen property, drug possession, possession of drugs, breaking and entering, thefts, burglaries, breaking and entering, another possession of drugs, possessing drug abuse instruments, and receiving stolen property; is that correct?"

**{¶59}** Defense counsel objected, and the court overruled the objection. Appellant answered, "I don't think that it's – you sounded like you repeated them or --." The state asked if he would like to go through each one individually and then asked if he agreed he was convicted of each offense, beginning with 2010. (Tr. 241-242, 245). Defense counsel objected after the first question, and the court overruled the objection. (Tr. 241). The objection was renewed after several more convictions were discussed. (Tr. 243).

**{¶60}** At a bench conference, the state explained it was reviewing the convictions individually because the defendant said the prosecutor repeated some offenses and exaggerated his record. (Tr. 243-245). The state also pointed out burglary and receiving stolen property were crimes of dishonesty. (Tr. 244). Defense counsel argued the convictions had no relevance to truthfulness, were old, and the testimony was being

presented to show he was acting in conformity with his criminal past. (Tr. 244). The court overruled the objection and noted defense counsel's objection would be continuing. (Tr. 245).

{¶61} The state's brief points to a rule specifically addressing the situation where the defendant testifies:

> For the purpose of attacking the credibility of a witness: * * *
>
> (2) notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
>
> (3) notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that any witness, including an accused, has been convicted of a crime is admissible if the crime involved dishonesty or false statement, regardless of the punishment and whether based upon state or federal statute or local ordinance.

Evid.R. 609(A)(2)-(3). We note none of the convictions mentioned were more than 10 years old, and the additional considerations in Evid.R. 609(B) were therefore unnecessary.

{¶62} Where the defendant testifies, crimes involving dishonesty are not subject to a weighing of probative value against prejudice. *See* Evid.R. 609(A)(3), excluding Evid.R. 403(B). The offenses of theft and receiving stolen property are crimes of dishonesty under Evid.R. 609(A)(3). *See State v. Turner*, 7th Dist. Mahoning No. 93 CA 91, 2004-Ohio-1545, ¶ 88 (aggravated robbery and theft); *State v. Brown*, 85 Ohio App.3d 716, 726, 621 N.E.2d 447 (3d Dist.1993) (aggravated burglary, grand theft, and receiving stolen property); *State v. Johnson*, 10 Ohio App.3d 14, 16, 460 N.E.2d 625 (10th Dist.1983) (petty theft and attempted receiving stolen property); *State v. Taliaferro*, 2 Ohio App.3d 405, 406-407, 442 N.E.2d 481 (5th Dist.1981) (petty theft and attempted receiving stolen property).

**{¶63}** Burglary or breaking and entering also falls into the category of a crime of dishonesty. *See State v. Ewing,* 10th Dist. Franklin No. 06AP-243, 2006-Ohio-5523, ¶ 24 (burglary); *State v. Wright*, 7th Dist. Columbiana No. 96-CO-34 (June 24, 1998) (burglary); *State v. Tolliver*, 33 Ohio App.3d 110, 113, 514 N.E.2d 922 (5th Dist.1986) (attempted breaking and entering). In any event, the latter two offenses are felonies.

**{¶64}** Likewise, at least two of the drug possession offenses were felonies and punishable by more than a year in prison under Evid.R. 609(A)(2). However, a drug abuse instrument offense would not have qualified under the category of offenses in Evid.R. 609(A)(2).

**{¶65}** The state additionally points to other evidentiary rules. The same rule containing the provision for other acts evidence initially states:

> Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, subject to the following exceptions:
>
> (1) Character of Accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same is admissible * * *."

Evid.R. 404(A). *See also* Evid.R. 405(A) ("In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct."); Evid.R. 613(C) ("During examination of a witness, conduct of the witness inconsistent with the witness's testimony may be shown to impeach"); Evid.R. 616(C) ("Facts contradicting a witness's testimony may be shown for the purpose of impeaching the witness's testimony").

**{¶66}** On direct examination by his attorney, Appellant testified he has "some" prior offenses in his criminal history and said he took responsibility for his actions in the past. He thereby suggested the alleged act of fleeing in this case was not in conformity with his character for taking responsibility for his past criminal actions. The state contends the defense opened the door to the cross-examination questions listing his criminal history; when he disputed this list by suggesting the state's recitation of offenses was inflated, the state questioned him in more detail.

**{¶67}** Even if some minor items in Appellant's prior criminal record should not have been discussed, there was overwhelming evidence demonstrating Appellant committed the misdemeanor failure to comply offense for which the jury convicted him. In other words, the specific questioning on any offense which did not satisfy Evid.R. 609 (and for which Appellant did not open the door) was harmless in this case (as further discussed supra). Appellant's second assignment of error is overruled.

**{¶68}** For the foregoing reasons, the trial court's judgment is affirmed.

Donofrio, P.J., concurs.

D'Apolito, J., concurs

———————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**